# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

KENNETH JOHN DAVID
SCHNEIDERS,

        Defendant.

No.  CR20-4032-LTS

**MEMORANDUM OPINION AND
ORDER ON REPORT AND
RECOMMENDATION**

_____

## I.    INTRODUCTION

This case is before me on a Report and Recommendation (R&R) filed by Chief United States Magistrate Judge Kelly K.E. Mahoney.  Doc. 48.  Judge Mahoney recommends that I deny defendant Kenneth Schneiders' motion (Doc. 24) to suppress. Schneiders has filed objections (Doc. 51) to the R&R and the Government has filed a response (Doc. 54).

## II.    BACKGROUND

### A.    Procedural History

On May 27, 2020, the Grand Jury returned an indictment charging Schneiders with conspiracy to distribute a controlled substance near a protected location (Count 1) and intent to distribute a controlled substance near a protected location (Count 2) in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846 and 860(a).  Doc. 2.  Schneiders has pleaded not guilty to both counts.  Doc. 6.

On September 13, 2020, Schneiders filed a motion to suppress evidence obtained during a warrantless search of his person conducted while officers investigated a potential drug deal based on information from a confidential source (CS).  Doc. 24.  Judge

Mahoney conducted a hearing on October 21, 2020. Doc. 45. Task Force Officer Ben Gill and Detective Paul Yaneff testified. Judge Mahoney also received into evidence Schneiders' Exhibits A-1, B-1 through B-6, C and D, and Government Exhibits 1 through 6. Docs. 39 through 39-8, 43 through 43-5, 45. She issued the R&R on November 4, 2020, recommending that I deny the motion to suppress because the search fell within an exception to the Fourth Amendment's warrant requirement. Doc. 48. A jury trial is currently set for January 4, 2021. *See* Doc. 37.

## B.   *Relevant Facts*

Judge Mahoney made detailed factual findings. Doc. 48 at 1–4. Schneiders has raised several objections to those findings, which I will address below. The findings are as follows:

> [A] CS contacted Drug Enforcement Agency Task Force Officer Ben Gill near the end of November 2019, indicating that a third party, who the CS named, wanted to sell ounce quantities of methamphetamine to the CS. The CS had previously provided reliable information to Officer Gill. On December 2, the CS contacted Officer Gill again, indicating that the third party wanted to meet in Sioux City to sell five to six ounces of methamphetamine to the CS for $3000.

> At 5:00 p.m., the third party texted the CS to meet him at the bar at 23rd and Court Street. There are no bars in that precise location, although there are several bars in the 2100 block of Court Street. Officer Gill went to 23rd and Court Street and parked in the parking lot for the Boys and Girls Home (which spans several blocks such that it has an address in the 2100 block, but its parking lot is near 23rd Street). After Officer Gill had parked at the Boys and Girls home, two stalls away from a red van, the third party texted the CS to go to the Boys and Girls Home and look for a "red van" with a "fat guy in it," indicating he had "everything." Officer Gill took note of the van's location, its Nebraska plates, and that a driver and passenger were in the van, and he left the Boys and Girls Home parking lot (but remained in the area).

> The CS received a message via Facebook from Schneiders, who the CS had never met before. Schneiders asked where the CS was. The CS responded by asking who Schneiders was, and Schneiders responded he was

2

the third party's friend. The CS asked whether they were meeting, and Schneiders said yes. He told the CS he was at the Boys and Girls Home. When the CS asked Schneiders to meet at Walmart instead, Schneiders said he was on foot, but a friend was letting him "stay warm in his car." Schneiders sent a picture of the Boys and Girls Home as seen through the windshield of the vehicle. He also sent a picture of the empty driver's seat, stating that the friend was not with him, and a "selfie" picture of his face. Schneiders complained about the length of time it was taking the CS to arrive, saying "If u don't want them I'm coo with it. I got a few others rn that need. I just am sick of [the third party] talking shit saying I never help him out."

Throughout, the CS kept Officer Gill updated on messages received from the third party and Schneiders, calling Officer Gill and sending screenshots of the messages. When the CS sent Officer Gill the picture from Schneiders of the Boys and Girls Home, Officer Gill confirmed that the angle of the picture was consistent with being taken from the red van he had previously identified. In the picture of the empty driver's seat, a white SUV was visible through the driver's side window—consistent with the white SUV parked two spaces away from the red van Officer Gill had observed earlier.

Officer Gill instructed uniformed officers in the area to approach Schneiders in the van, including Sioux City Police Detective (and at that time K-9 handler) Paul Yaneff. Detective Yaneff recognized Schneiders's name—he knew what he looked like and that he lived a few blocks away from the Boys and Girls Home, and he had heard from other officers that Schneiders was a methamphetamine user and dealer. Detective Yaneff arrived on the scene first, quickly followed by three other officers. Detective Yaneff told Schneiders that there had been a report of a suspicious vehicle, and he asked Schneiders, who was sitting in the passenger seat, to step out of the van. He asked Schneiders what he was doing, and Schneiders indicated he was waiting for a friend to finish a domestic violence class at the Boys and Girls Home. Detective Yaneff asked if there was anything in the van he needed to be aware of, and Schneiders told him that it was not his vehicle, and belonged to his friend in the domestic violence class. Detective Yaneff asked Schneiders if he had any weapons on him, like pocketknives, which Schneiders denied. When Detective Yaneff asked if he could conduct a pat-down search to confirm, Schneiders refused. Detective Yaneff again asked if there was anything in the vehicle, and Schneiders said not to his knowledge. Detective Yaneff then asked Schneiders about drug use, and Schneiders indicated he had last used methamphetamine in

3

January. Detective Yaneff told Schneiders he was going to run his K-9 Cash around the vehicle, and if Cash alerted, he would have probable cause to search Schneiders. The drug dog sniff of the van occurred within three minutes of Detective Yaneff's first contact with Schneiders. The drug dog alerted on the passenger side front door.

During the K-9 sniff, Schneiders, who was standing in front of a nearby patrol vehicle, called his mother, and he was still on the phone after the dog's alert. When he finished the phone call, officers handcuffed him after a bit of resistance. They took the cell phone from his hand and placed it on the hood of a patrol vehicle. They searched his person, discovered a methamphetamine pipe, and read him his Miranda rights. Then, they searched the van and discovered two ounces of methamphetamine behind the passenger seat. At the end of the encounter, they let Schneiders go and did not take him into custody, although they kept the phone, pipe, and methamphetamine (and eventually obtained a warrant to search the phone three months later).

Doc. 48 at 1–4.

### III. APPLICABLE STANDARDS

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court

4

judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## IV.    DISCUSSION

Schneiders raises five factual objections to the R&R. First, he argues that there is no evidence supporting the finding that Detective Yaneff recognized Schneiders' name, knew where he lived or knew that he was involved with drugs. He argues that although Yaneff testified that another officer had told him about Schneiders' drug use, none of the reports provided by the Government show that Yaneff knew these facts. While other evidence could have been helpful, Schneiders has provided no grounds for doubting Yaneff's credibility. This objection is overruled.

Second, Schneiders argues that Judge Mahoney erred by omitting the degree to which Yaneff's decision to tell Schneiders that he was investigating reports of a suspicious vehicle was a complete ruse. Yaneff's statement that he had received a call about a suspicious vehicle was not entirely untrue. He had been called about and asked to investigate a vehicle alleged to be involved in a drug deal. Additionally, Yaneff's statement was an investigation strategy. Judge Mahoney's findings sufficiently indicate

5

that Yaneff knowingly and strategically withheld information from Schneiders when he approached him. This objection is overruled.

Third, Schneiders argues that Judge Mahoney erred by finding that the drug dog alerted at the front passenger door of the van. He argues that the alert actually occurred at the rear passenger door. The testimony at the hearing appears to indicate that the alert indeed happened at the rear passenger door, and the Government has not argued otherwise. Doc. 49 at 56. This objection is sustained.

Fourth, Schneiders argues that Judge Mahoney failed to note that the officers' search was conducted by threat of violence. He asserts that the evidence shows that the officers physically restrained him, and threatened to assault him with a baton, in order to search him. Yaneff indeed testified that another officer told Schneiders that he would hit Schneiders with a baton if he did not stop resisting the search. Doc. 49 at 58. Other evidence indicates that Schneiders was not handcuffed until after the search. *Id.* at 45. However, neither of these facts supports Schneiders' characterization that the search was conducted through the threat of violence. This objection is sustained to the extent that an officer did tell Schneiders that he would use a baton if he did not stop resisting.

Finally, Schneiders argues that Judge Mahoney failed to determine whether he was arrested on the night he was searched. However, Judge Mahoney clearly analyzed Schneiders' motion on the basis that he was not arrested for Fourth Amendment purposes until six months after the search occurred. This objection is overruled.

Schneiders raises two legal objections to the R&R. First, he argues that the warrantless search does not fall under any exception to the warrant requirement. He argues that the search incident to arrest exception, specifically, does not apply because he was not arrested until approximately six months after the search. Second, he argues that the officers' warrantless search violated his Fourth Amendment rights because they did not have probable cause to arrest or search him. Because determining whether the officers had probable cause is necessary to determine whether the officers' warrantless search was permissible, I begin with that issue.

6

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Because arrests are "seizures" of "persons," they violate the Fourth Amendment when they are unreasonable under the circumstances. *D.C. v. Wesby*, 138 S. Ct. 577, 585 (2018). A warrantless arrest is unreasonable unless an officer has probable cause to believe that the suspect committed a crime, even a minor crime, in the officer's presence. *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001). Probable cause to arrest exists when the totality of the circumstances, "viewed from the standpoint of an objectively reasonable police officer," indicate "a probability or substantial chance of criminal activity." *Wesby*, 138 S. Ct. at 586 (citations omitted).

Judge Mahoney found that under the totality of the circumstances, the officers had probable cause to arrest Schneiders at least by the time of the drug dog alert. Schneiders argues that the officers did not have probable cause to arrest when they first approached and detained him or after the alert. He does not dispute that the result of the drug dog sniff created probable cause to search the van, but he argues that probable cause to search the van did not automatically equate to probable cause to arrest, or search, him. According to Schneiders, the officers could not have had probable cause to arrest and search him unless they first confirmed or denied that there were drugs in the van.

It is true that a drug dog alert, without more, may be insufficient to provide probable cause to arrest an individual. *See United States v. Humphries*, 372 F.3d 653, 659 (4th Cir. 2004) ("[P]robable cause to believe that marijuana is located in an automobile or an apartment may not automatically constitute probable cause to arrest all persons in the automobile or apartment; some additional factors would generally have to be present, indicating to the officer that those persons possessed the contraband."); *but see United States v. Race*, 529 F.2d 12, 14 (1st Cir. 1976) (finding that a "dog's strong alert to the two crates, when turned loose in a warehouse containing some 300 crates," provided probable cause to arrest the crate's owners when there was "a strong foundation of canine reliability and handler expertise"). However, and as Judge Mahoney explained,

7

Schneiders' argument disregards the fact that the existence of probable cause is determined by considering the totality of the circumstances, not each fact in isolation. *See Wesby*, 138 S. Ct. at 588 (rejecting the court of appeals' mistake of viewing the facts in support of finding probable cause "in isolation, rather than as a factor in the totality of the circumstances" (quoting *Maryland v. Pringle*, 540 U.S. 366, 372 n.2 (2003))); *see also United States v. Winters*, 600 F.3d 963, 968 (8th Cir. 2010) (noting that even if there are grounds for questioning the reliability of a drug dog's alert, the issue remains "whether 'the totality of the circumstances present at the scene' provided probable cause" (quoting *United States v. Donnelly*, 475 F.3d 946, 955 (8th Cir. 2007))).

The drug dog's alert on the vehicle in which Schneiders had been sitting was merely the last in a series of circumstances that cumulatively provided probable cause to arrest Schneiders. A CS, who had previously provided reliable information, told Officer Gill that another person wanted to sell the CS drugs. That person told the CS to go to the Boys and Girls Home and look for a red van with a man in it. Schneiders then contacted the CS, told him that he was the drug dealer's friend and that he was waiting at the Boys and Girls Home in a car, and sent pictures to prove it. He also told the CS that if he did not want what he had, there were others who did. All of Schneiders' messages to the CS were forwarded to Officer Gill as they came in.

A short time later, officers approached the only red van in that area, found Schneiders inside and recognized him as a known drug user and seller. After the officers asked for consent to conduct a pat-down search to check for weapons, Schneiders declined. However, a drug dog sniff a few minutes later resulted in an alert that drugs were, or recently had been, in the van. Based on my de novo review, I agree with Judge Mahoney that all these circumstances together provided probable cause to arrest Schneiders.[1] *See, e.g., Winters*, 600 F.3d at 968 (finding there was probable cause to

---

[1] Because the search did not occur until after the drug dog alert, it is not necessary to determine whether the officers had probable cause to arrest Schneiders before that alert.

8

arrest and search a defendant when police officers received a detailed tip from an anonymous source regarding the defendant's plans to traffic drugs, the details were corroborated as the defendant was followed throughout the day, the defendant acted furtively when stopped by officers and a drug dog alerted to the presence of drugs at the defendant's car and on his person).

The next issue is whether the officers' warrantless search under these circumstances was permissible under the Fourth Amendment. Judge Mahoney concluded that even though Schneiders was not actually arrested until months after the search, the officers validly searched Schneiders in accordance with the principles in *Cupp v. Murphy*, 412 U.S. 291 (1973). Specifically, she found that the probable cause to arrest Schneiders, Schneiders' probable knowledge that the officers suspected him of attempting to sell drugs, and the ease with which he could have disposed of any potential evidence of that crime justified the search under *Cupp*.

Schneiders argues that *Cupp* does not apply here because it involved the search incident to arrest exception to the warrant requirement and he was not arrested at or near the time of the search. According to Schneiders, the search incident to arrest exception applies only when the search is contemporaneous with an arrest. Because he was released after his encounter with law enforcement, and was not arrested until several months later, Schneiders argues that the search cannot be considered incident to an arrest. Therefore, because the search was without a warrant, and no exception to the warrant requirement applied, Schneiders argues the evidence obtained from that search must be suppressed.

In *Cupp*, the Supreme Court found that the warrantless search of an individual who was momentarily detained for the search, but not arrested until a month later, did not violate the Fourth Amendment. *Cupp*, 412 U.S. at 296. However, the extent to which this case fits within the scope of the search incident to arrest exception is unclear. The Court referenced *Chimel v. California*, 395 U.S. 752 (1969), a case clarifying the boundaries of the search incident to arrest exception, as providing the principles for finding the warrantless search in *Cupp* lawful. *Cupp*, 412 U.S. at 295. Moreover, the

9

Court has cited *Cupp* for support in a subsequent search incident to arrest cases. *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980). However, *Cupp* is not generally considered as a search incident to arrest case. Instead, it is frequently discussed as a case involving exigent circumstances justifying a warrantless search, namely preventing the likely destruction of evidence by a person who could be arrested at that time irrespective of that evidence. *See Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2541 (2019) (Thomas, J., concurring) (citing *Cupp* for the proposition that "[t]he Court has consistently held that police officers may perform searches without a warrant when destruction of evidence is a risk"); *Missouri v. McNeely*, 569 U.S. 141, 149 (2013) (citing *Cupp* for the proposition that "in some circumstances law enforcement officers may conduct a search without a warrant to prevent the imminent destruction of evidence"); *United States v. Pope*, 686 F.3d 1078, 1084 (9th Cir. 2012) (noting that although *Cupp* drew from search incident to arrest principles, Ninth Circuit cases have applied *Cupp* as an exigent circumstance exception when there is a "high risk that evidence will be destroyed in a particular situation"); *Hall v. Iowa*, 705 F.2d 283, 291 (8th Cir. 1983) (describing and discussing *Cupp* as a case regarding an "'emergency' exception to the warrant requirement").

Thus, although the exception recognized in *Cupp* and the search incident to arrest exception may be related, they are also distinct, as the *Cupp* exception does not require an arrest. *See Cupp*, 412 U.S. at 300 (Blackmun, J. and Burger, C.J., concurring) ("While I join the Court's opinion, I do so with the understanding that what the Court says here applies only where no arrest has been made. Far different factors, in my view, govern the permissible scope of a search incident to a lawful arrest."). Instead, *Cupp* applies when certain other factors are present.

First, officers must have probable cause to arrest the subject at the time of the search. *Cupp*, 412 U.S. at 296. Second, although the timing of any related arrest may be irrelevant, the search must occur under arrest-like circumstances. *Id.* Because a person who is not arrested before a search does "not have the full warning of official suspicion that a formal arrest provides," circumstances leading up to the search must

10

"sufficiently apprise[] [him] of his suspected role in the crime" such that there is motivation to destroy or dispose of evidence of that crime. *Id.*

Third, the evidence that is searched for must be readily destructible. *Id.* In a concurring opinion, two justices also suggested that the officers must have "reasonable cause to believe that the evidence [is] on [defendant's] person." *Id.* at 300 (Blackmun, J. and Burger, C.J., concurring). Finally, a search that occurs without an arrest must be more limited than a typical search incident to arrest, meaning it does only what is necessary to preserve or protect evidence from destruction. *Id.* at 296.[2]

Based on my de novo review, I agree with Judge Mahoney that the warrantless search of Schneiders' person in this case was consistent with *Cupp* and did not violate the Fourth Amendment. As discussed above, the officers had probable cause to arrest Schneiders by at least the time of the drug dog alert. The officers' investigatory actions and questions, including the drug dog's alert, warned Schneiders of the officers' suspicions that he possessed drugs or was involved in trafficking them. Such knowledge provided motivation to destroy or otherwise dispose of such evidence. Because of the officers' evidence that Schneiders was involved in a drug deal, and the high likelihood that drugs were, or had been, near where Schneiders was sitting in the van, the officers had reasonable grounds for believing that Schneiders would have evidence of a drug transaction on his person. Such evidence could be easily destroyed, or otherwise disposed of, if it were not seized before allowing Schneiders to leave. Finally, there is no evidence that the search was unreasonably intrusive or was conducted for any purpose other than to recover evidence related to drugs. As such, and with the exception of the minor factual modifications addressed above, which do not affect the ultimate outcome, I will adopt Judge Mahoney's R&R.

---

[2] The Eighth Circuit, in dictum, has recognized these guiding principles from *Cupp*. *United States v. Lester*, 647 F.2d 869, 873 n.7 (8th Cir. 1981).

## V. CONCLUSION

For the reasons set forth herein:

1.  Schneiders' objections (Doc. 51) to the Report and Recommendation (Doc. 48) are **sustained in part and overruled in part**.  They are **sustained** as to factual objections three and four, as specifically described herein, and **overruled** on all other grounds.

2.  I **accept** the Report and Recommendation, except to the limited extent that I have modified the factual findings in response to factual objections three and four.

3.  In accordance with the Report and Recommendation, Schneiders' motion to suppress (Doc. 24) is **denied**.


**IT IS SO ORDERED.**

**DATED** this 10th day of December, 2020.

_____

Leonard T. Strand, Chief Judge